**SO ORDERED.**
**SIGNED this 15th day of October, 2015**

_Shelley D. Rucker_
_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **BILL ANDERSON BANKSTON** | ) | **CASE NO. 1:12-BK-14022-SDR** |
| **and PHYLLIS ANN BANKSTON,** | ) | **CHAPTER 13** |
| | ) | |
| **Debtors.** | ) | |

**MEMORANDUM OPINION**

### I.      Background Facts and Procedure

This matter is before the court on the Debtors' Motion for Protective Order filed on May

1, 2015.  (Doc. No. 119). The motion seeks: (a) to require National Data Center, Inc. ("NDC"),

Valley of the Moon Royalties, Inc. ("VMR"), and certain unnamed subscribers and/or customers

of theirs (collectively the "Respondents") to take action to redact the Debtors' personally identi-

fiable information ("PII") from their records and (b) to prohibit the Respondents from further

dissemination of that information. Debtors rely on 11 U.S.C. §§ 105(a) and 107(c) and Fed. R.

Bankr. P. 9037(d)(1) and (2) as their legal authority for the protective order they seek.

1

On May 19, 2015, NDC filed an objection to the motion on three grounds: (1) the request for injunctive relief was procedurally improper, (2) the Debtors lacked a private cause of action under sections 107 and 105 of the bankruptcy code, and (3) the Debtors failed to make the requisite showing to obtain relief under Fed. R. Bankr. P. 9037(d)(1) and (d)(2). On the following day, VMR also objected on similar grounds.

At the hearing on the motion on May 21, 2015, the Debtors acknowledged that their request was based on a theory that would expand the scope of section 107 further than it had ever been expanded before, but they contended that the potential harm from the alleged sale of their PII to entities who are not parties in interest in their case merited the expansion. The court ordered the parties to file briefs on the extent of the court's authority to grant the relief requested under sections 107 and 105 and Rule 9037.  The court also asked the parties to identify the risk of identity theft or other unlawful harm the movants were facing.  The parties provided comprehensive briefing on the legal issues; however, prior to the court's issuing its opinion on the legal question of the scope of its authority, the case was dismissed for nonpayment on July 1, 2015, raising the preliminary issue of whether the court has jurisdiction to address the motion.

Based on the following analysis, the court concludes, first, that it has authority to determine the motion even after the dismissal of the case and, second, that the sections and rules relied on by the Debtors do not authorize the relief the Debtors have requested. Accordingly the Debtors' motion will be denied.

## II.     Analysis

### 1.  Jurisdiction After Dismissal

The issue before the court involves the extent of the court's powers to prevent dissemination of PII contained in documents that were submitted to the bankruptcy court in accordance

2

with the bankruptcy rules. The court finds that this issue relates to the administration of the bankruptcy estate under 28 U.S.C. § 157(b)(2)(A). The Debtors are asking for interpretation of bankruptcy code section 107 and Fed. R. Bankr. P. 9037.  If the case were still pending, there would be no question as to whether the court has jurisdiction to address the merits of the motion. The question is whether that jurisdiction ended with the dismissal of the case.

The general rule is that the dismissal of a bankruptcy case results in the dismissal of related proceedings because federal jurisdiction is premised upon the nexus between the underlying bankruptcy case and the related proceedings. *In re Morris*, 950 F.2d 1531, 1534-35 (11th Cir. 1992) (citing *In re Smith*, 866 F.2d 576, 580 (3d Cir. 1989)).  However, "the general rule is not without exceptions." *Id.* The court may retain jurisdiction over an adversary proceeding even after the bankruptcy case has been dismissed provided that the exercise of jurisdiction would be consistent with the principles of pendent jurisdiction. *See Celotex Corp. v. Edwards,* 514 U.S. 300, 307, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995).  Courts have also retained jurisdiction over certain contested matters, including applications for attorney's fees and motions for contempt for violation of the automatic stay, following dismissal of the bankruptcy case.  *See, e.g., In re 5900 Assocs., Inc.*, 468 F.3d 326, 330-31 (6th Cir. 2006); *In re Burgner*, 218 B.R. 413, 415 (Bankr. E.D. Tenn. 1998); *In re Tennessee Valley Ctr. for Minority Econ. Dev. Inc*., 99 B.R. 845, 846 (Bankr. W.D. Tenn. 1989).  The matters over which a court retains jurisdiction after dismissal of a case "typically involve retention for the purpose of vindicating the court's own authority and to enforce its own orders." *Norwood v. Select Portfolio Servicing, Inc. (In re Norwood)*, 2008 WL 660071, at *1 (Bankr. E.D. Tenn. March 10, 2008) (citing *In re Burgner*, 218 B.R. at 414; *In re Skaggs*, 183 B.R. 129, 131 (Bankr. E.D. Ky. 1998)).

The Sixth Circuit addressed the issue of retained jurisdiction after dismissal in a footnote in *Javens v. City of Hazel Park (In re Javens)*, 107 F.3d 359, 364 n.2 (6th Cir. 1997).  After noting that an action for damages for willful violation of an automatic stay survives the dismissal of the bankruptcy case, the Sixth Circuit observed that the "dismissal of an underlying bankruptcy case does not automatically strip a federal court of residual jurisdiction to dispose of matters after the underlying bankruptcy case has been dismissed."  *Id.* (citing *Price v. Rochford*, 947 F.2d 829, 830-31 (7th Cir. 1991); *In re Carraher,* 971 F.2d 327, 328 (9th Cir. 1992); *In re Morris*, 950 F.2d at 1534; *In re Smith*, 866 F.2d at 580; *In re Lawson,* 156 B.R. 43, 45 (9th Cir. B.A.P. 1993)).  Rather, the "exercise of such jurisdiction is left to the sound discretion of the trial court." *Id.*

Issues involving section 107 and Rule 9037 relate to the court's powers to prevent the court record from being misused to facilitate identity theft or other unlawful harm to a debtor. Debtors are required by the bankruptcy code to provide PII so that notice of their filing may be given to their creditors and parties in interest. The protections the court may impose under 11 U.S.C. § 107(c)(1) are there to protect debtors from the disclosure of sensitive information that might facilitate identity theft or other injury through the unlawful use of that information. The court finds that the Debtors' need for this protection continues after the dismissal of the case even though granting such protection might not affect the Debtors' estate or the relationships between the Debtors and their creditors or other parties in interest in a case.

Further, the court finds that the factors to be considered when determining whether to exercise its discretionary jurisdiction weigh in favor of retaining jurisdiction.  Courts typically consider four factors when determining whether to retain discretionary jurisdiction following a dismissal of the underlying bankruptcy case: (1) judicial economy; (2) fairness; (3) convenience;

4

and (4) comity.  *See Porges v. Gruntal & Co., Inc. (In re Porges)*, 44 F.3d 159, 163 (2d Cir.

1995); *see also Clarke v. Shofner (In re Clarke)*, 2011 WL 3511524, at *2 (Bankr. E.D. Tenn.

Aug. 11, 2011) (citing *Peabody Landscape Constr. Inc. v. Schottenstein*, 371 B.R. 276, 280 (S.D.

Ohio 2007)).   Judicial economy is served because a ruling in this case will address the Debtors'

counsel's contention that NDC's and VMR's access to PII from chapter 13 trustees potentially

creates a problem for any debtor whose PII was sent to NDC. A ruling in this case will assist

counsel for other debtors with this court's interpretation of its powers under section 107. As to

fairness and convenience, both parties have briefed the issue and appeared before the court.

Comity is not an issue because there is no case pending in a state court to which this court should

defer and the legal issue in the matter involves bankruptcy law. For these reasons, the court will

exercise its discretion and address the merits of the motion.

## 2.  Extent of the Court's Powers Under 11 U.S.C. § 107(c) and Rule 9037

The parties do not dispute the facts relevant to the court's consideration of the issue. The

PII was disclosed by the Debtors on Official Form B 21 submitted to the court with their petition.

Social Security Number Certification (Doc. No. 3). This form contains a statement of the Debt-

ors' nine-digit Social Security numbers and is required to be submitted to the court by Fed. R.

Bankr. P. 1007(f). Although it is docketed, its viewing is restricted in the court's public electron-

ic records. Official Bankruptcy Form B 21, 2012 advisory committee notes; *see also* Fed. R.

Bankr. P. 1007(f) and 9037.  "Creditors in a case, along with the trustee and United States Trus-

tee or bankruptcy administrator, will receive the full Social Security number on their copy of the

notice of the meeting of creditors. The copy of that notice which goes into the court file will

show only the last four digits of the number." Official Form B 21, 2003 advisory committee

notes. This was true in this case. Notice of Meeting of Creditors (Doc. No. 13).

A party filing a document in the court with a Social Security number may include only the last four digits of that number in its filing. Fed. R. Bankr. P. 9037(a)(1). All the filings made with the court which may be viewed by the public contain only those last four digits. NDC and VMR have made no filings in this case.

NDC provides data services to chapter 13 trustees across the country. The chapter 13 trustee in this case used those services during the period from the commencement date of the case to at least April of 2013. The Debtors' case information, including their Social Security numbers, would have been part of the information conveyed to NDC during this period. VMR is a subscriber to the services of NDC. To the extent that NDC or VMR had or still have the Social Security numbers and any other PII of these Debtors, that information was not obtained from the court's records. The PII was provided to NDC and VMR by the chapter 13 trustee or another party.

The Debtors request relief in the form of:

> a protective order requiring the immediate redaction of and prohibition of the future use of and/or disclosure of the Debtors' Chapter 13 case information, including, but not limited to, their personally identifiable information ("PII"), including their nine (9) digit social security numbers and un-redacted financial account numbers, by, to or from . . . [NDC, VMR, and] [a]ny and all of the debt-buying subscribers and/or customers of [NDC and/or VMR] which were allowed access to and use of the Debtors' Chapter 13 case information, including, but not limited to, their protected PII, including their nine (9) digit social security numbers and un-redacted financial account numbers.

Debtors' Mtn. for Protective Order, (Doc. No. 119, at 1-2).

The question for the court is whether it has authority to grant such relief under section 107 of the bankruptcy code or under Rule 9037.  Although factually distinguishable from this matter, the case of *In re French*, 401 B.R. 295 (Bankr. E.D. Tenn. 2009), addressed this code section and rule.  *In re French* involved an adversary proceeding in which the debtor was seeking a protective order and damages from a creditor who had filed a claim containing the debtor's

6

Social Security number in the claims docket. Although the motion in this case does not seek damages and does not involve a creditor of the Debtors, this court finds the *French* court's discussion of the purpose and history of section 107 instructive in its analysis of the issue at hand.

> Clearly, the Plaintiff falls within the scope of individuals as referenced in subsection (c); however, taking the statute as a whole, the court does not believe that § 107(c) was enacted for the special benefit of any specific class of persons. Rather, the purpose of § 107 as a whole is to ensure that papers filed in a bankruptcy case are public records, and the purpose of § 107(c), specifically, is to set forth a limited exception to the general rule that all records are public, allowing a court to limit public access of certain identification information if it determines that cause exists and dissemination of the information would constitute an undue risk of identity theft. In other words, the court agrees that, by authorizing the court to limit public access to certain types of papers, the statute "**addresses the operation of the court, not the behavior of parties who appear before it**[.]" *Southhall v. Check Depot, Inc. (In re Southhall),* 2008 Bankr. LEXIS 3446, at *7, 2008 WL 5330001, at *2 (Bankr. N.D. Ala. Dec. 19, 2008); *see also Newton v. ACC of Enter., Inc. (In re Newton),* 2009 WL 277437, at *2 (Bankr. M.D. Ala. Jan. 29, 2009).

*In re French*, 401 B.R. at 305-06 (emphasis added).

> Continuing with a discussion of the legislative history of section 107, the court stated:

> Although sparse, legislative history confirms Congressional intent as to the statutory purpose. Section 107 was amended by the addition of subsection (c) as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), to address privacy concerns and to prevent the "disclosure of sensitive information in light of the emerging problem of identity theft and also the possible need to protect individuals from domestic violence or other injury." 2 COLLIER ON BANKRUPTCY ¶ 107.LH[2] (15th ed. 2008). With respect to these issues, the legislative history giving rise to § 107(c) states as follows:

>> Privacy Protections. Under current law, nearly every item of information filed in a bankruptcy case is made available to the public. S. 256 restricts public access to certain personal information pertaining to an individual contained in a bankruptcy case file to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property. In addition, the bill prohibits the disclosure of the names of the debtor's minor children and requires such information to be kept in a nonpublic record, which can be made available for inspection only by the court and certain other designated entities. Further, S. 256 prohibits the sale of customers' personally identifiable information by a business debtor unless certain conditions are satisfied.

>> H.R. Rep. 109-31(I), Pub. L. 109-8 (Apr. 8, 2005), U.S. Code Cong. & Admin. News 2005, p. 88.

This legislative history evidences that Congress did not intend for § 107(c) to create a private right of action or to be a remedial statute in any way. Instead, it expressly discusses the duty of the court to restrict public access to the extent *the court* finds that disclosure of information creates an undue risk, and as such, reinforces that the sole purpose [of] § 107(c) was to establish public access to court documentation with very limited exceptions and not to create a private right of action for the Plaintiff to seek damages for the filing of private personal information. Accordingly, the Plaintiff has failed to state a claim upon which relief may be granted with respect to an alleged violation of § 107(c).

*Id.* at 306.

The Debtors' request seeks an order which would address the conduct of the parties rather than the operation of the court. The court has broad powers to fashion a remedy to protect the information filed in its own records.[1] However, the Debtors have been unable to direct the court to a single case where a court has ordered, under the authority of section 107, redactions in or limitations on access to records held by a third party obtained from a source other than the court. A review of the legislative history and the analysis in *In re French* leads the court to conclude that section 107 does not authorize the court to grant the relief requested. The court's authority under section 107 relates to controlling access to the court's own records.

The court also finds that Rule 9037, entitled "Privacy Protection for Filings Made With the Court," also relates only to filings made with the court and is not a basis for the relief requested. The title of the rule makes that clear, and the remedies provided by the rule relate to "a document filed with the court." Fed. R. Bankr. P. 9037(d)(2). Because neither the section nor the rule provides a legal basis for formulating a remedy, the court finds that 11 U.S.C. § 105 alone does not grant this court "broad remedial powers" to provide the requested relief. *Pertuso v. Ford Motor Co.*, 233 F.3d 417, 423 (6th Cir. 2000).

---

[1] Under section 107(b), the court has a "myriad of options in fashioning an appropriate remedy." William T. Bodoh and Michelle M. Morgan, "Protective Orders in the Bankruptcy Court: Congressional Mandate of Bankruptcy Code Section 107 and Its Constitutional Implications," 24 HASTINGS CONST. L.Q. 67, 93 (1996). The court finds that the same would be true with subsection (c). *See In re Carter,* 2009 WL 3425828 (Bankr. N.D. Ala. October 23, 2009) (court granted sanctions against a creditor for improperly filed papers containing personal identifiers).

8

**III.    Applicability of Fed. R. Bankr. P. 7065**

Finally, the Respondents raised the applicability of Fed. R. Bankr. P. 7065 to the Debtors' motion. This rule addresses temporary restraining orders in adversary proceedings. The court has before it only a contested matter. To the extent that the Debtors are seeking injunctive relief against the Respondents based on a violation of some duty owed to them by the Respondents to protect their PII obtained from a source other than the court's records, the motion is procedurally deficient. Injunctive relief must be requested in an adversary proceeding. Fed. R. Bankr. P. 7001(7).

**IV.    Conclusion**

For the forgoing reasons, the court will deny the Debtors' motion for a protective order. A separate order will enter.

###